UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____
IN RE:                              )
                                    )
VETCISION, LLC                      )     Chapter 11
                                    )     Case No. 10-17122-HJB
        Debtor                      )
_____)


**AFFIDAVIT OF BRIAN T. HUSS, DVM, MS**
**IN SUPPORT OF FIRST DAY PLEADINGS**


Brian T. Huss, DVM, MS, being duly sworn, deposes and states:

1. On the date hereof (the "Petition Date"), the above-captioned debtor (the "Debtor") commenced a case under title 11 of the United States Code (the "Bankruptcy Code") in this Court. I am a Managing Member of the Debtor, and in that capacity, I am familiar with the operations, business affairs, financial records and other books and records of the Debtor.

2. In order to enable the Debtor to operate effectively and minimize the potential adverse effects of its chapter 11 case, the Debtor has requested various types of relief in "first days" motions and applications filed with the Court concurrently herewith. I submit this affidavit in support of these first day motions and applications. Except as otherwise indicated, all facts set forth in this affidavit are based on my personal knowledge, my review of relevant documents or my opinion based on my experience, knowledge and information concerning the operations and financial affairs of the Debtor. If I were called upon to testify, I would testify competently to the facts set forth in this affidavit. I am authorized to submit this affidavit.

## BACKGROUND

### Business operations

3. The Debtor is a surgical veterinary specialty practice located in Waltham, Massachusetts. The Debtor runs one of the premier veterinary surgical hospitals in the Metro Boston market. A significant part of the Debtor's customer base comes from referrals from other Veterinarians.

4. Debtor currently has approximately 20 employees and has approximate weekly gross sales of between $38,000.00 and $51,000.00 depending on the week and time of year.

### Ownership of Debtor

5. The Debtor is a Massachusetts Limited Liability Company with one (1) Member.

### Indebtedness

6. The Debtor owes approximately $1,200,000.00 which includes general unsecured debt and disputed equipment leases and $4,000,000.00 in secured (undersecured) debt.

## FACTS IN SUPPORT OF FIRST DAY PLEADINGS

7. Concurrently with the filing of its chapter 11 petition, the Debtor has filed a number of application, motions, and proposed orders (the "First Day Pleadings") that it believes are essential to enable it to operate in chapter 11 with a minimum of disruption and loss of productivity. The Debtor requests that each of the First Day Pleadings described below be entered as each of them constitutes a critical element in achieving the successful reorganization of the Debtor for the benefit of all parties in interest.

Motion for an Order Authorizing the Temporary Use of Existing
Bank Account for Credit Card Transactions and Deposits

8. The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession ("DIP"). These guidelines require chapter 11 debtors, among other things to (1) close all existing bank accounts and open new debtor-in-possession checking and payroll accounts, and (2) obtain checks for all debtor-in-possession accounts which bear the designation "debtor-in-possession", the bankruptcy case number and the type of account.

9. The Debtor has historical weekly sales of between $40,000-$50,000. Typically, approximately 90% of the weekly gross receipts result from Mastercard, Visa, and Discover, charges.

10. These credit charges are directly deposited by the clearing bank into Debtor's existing bank account Monday through Friday once a day.

11. Based on inquiry to Mastercard, Visa, and Discover it takes approximately 15-30 days to switch a deposit account because of the administrative procedure involved between the credit companies, the banks, and Debtor.

12. Prior to filing, the Debtor requested the necessary paperwork to begin the transfer process. Further, the Debtor, upon opening its DIP Accounts shall immediately forward the request and voided check to the credit card company to ensure that all transactions are hereafter deposited to a DIP Account.

13. Because of the volume of weekly receipts attributed credit card transactions, it is essential to Debtor's operations that this process of depositing credit card receipts continues to run smoothly and not be interrupted during the first 30-days, post-petition.

14. Any deposits received during this 30-day period will be immediately transferred from the existing bank accounts into the DIP Account.

Motion for Authority to Pay Prepetition
<u>Wages, Salaries and Expenses</u>

15. In the ordinary course of its business, the Debtor pays it employees in every two weeks in arrears on Friday.  The weekly pay employees were paid most recently on Friday, June 18, 2010.  The Debtor is due to pay those employees for work performed through June 27, 2010.

16. The Debtor seeks authority to pay wages and salaries accrued by the Debtor's employees prior to the Petition Date.

17. As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the checks, wire transfers, and direct deposit transfers in respect of the above matters will be dishonored or rejected.

18. Because the majority of the employee-related compensation obligations constitute priority claims that must be paid in full in any event under the Plan, payment of such obligations at this time is appropriate, and this Court is authorized to grant the relief requested.  Unless otherwise noted in the Motion, the Debtor believes that no employee is owed greater than $10,950.00 per individual, payable in the ordinary course of business, in respect of the compensation obligations earned within ninety days prior to the Petition Date.

19. Granting the Motion would have no substantial effect on the relative distribution of the estate assets and, in fact, is the best way to assure that the Debtor will emerge from chapter 11 with its human resources intact.

Motion for Interim Use of Cash Collateral

20. In or around November 2007, as part of an SBA Debenture Guarantee program (SBA 504 Loan), Middlesex made a Loan to the Debtor and Chiron Properties in the original principal amount of $2,250,000.00. This loan was for the purchase and renovation of the building located at 293 Second Ave. Debtor and its principal contributed $100,000.00 towards the purchase price. This loan is secured by the Real Property and all assets of the Debtor.

21. In or around June 2008, Middlesex loaned Chiron and the Debtor approximately $1,800,000.00 for the buildout and renovation of the premises to a state of the art veterinary surgical hospital and an additional $250,000.00 for operating costs and other start-up costs. Again, this loan was secured by the Real Property and all of Debtor's assets.

22. In or around June 2008 as part of the SBA 504 loan, the Small Business Administration, through Granite State Economic Development Corp., agreed to fund approximately $1,900,000 of the project buildout costs for the initial purchase and installation of equipment for the hospital, and paid Middlesex Bank these funds towards the outstanding indebtedness owed to Middlesex.

23. Debtor asserts that a replacement lien is warranted under the circumstances of this case.

24. Furthermore, Debtor seeks to pay Middlesex the bi-weekly sum of $1,250.00 as adequate protection of the funds loaned to Debtor.

25. Debtor requires the continuing use of cash collateral and proceeds from the sale of the inventory in the ordinary course of its business.

26. Debtor believes that approval of this Motion by the Court will minimize disruption of the Debtor's business, will increase the possibilities for a successful reorganization and is in the best interests of the Debtor, creditors and Debtor's estate.

Motion for Joint Administration

27. The Debtor has requested this Court for Joint Administration with the chapter 11 case of Chiron Properties, LLC (10-17143-HJB)

28. These cases are related in that Chiron Properties, LLC was formed to purchase the land and building at 293 2nd Ave, Waltham. Vetcision, LLC was formed to operate a veterinary specialty practice at the Second Ave location. I am the Principal and 100% owner of Chiron Properties, LLC and Vetcision.

29. There are numerous creditors who are parties in interest in both cases.

30. A majority of the secured and undersecured loans granted to these entities are cross-collateralized with the assets of the other.

31. Joint administration of the Debtors' cases will not impact substantive rights of parties in interest. The rights of creditors of each of the Debtors will not be adversely affected by joint administration of these cases. In fact, the economics of efficiency will inure to the benefit of all of the creditors of these Debtors. Finally, supervision

of the administrative aspects of these Chapter 11 cases by the Court and the Office of the United States Trustee will be simplified.

## CONCLUSION

I respectfully request that all the First Day Orders be granted.

/s/ Brian T. Huss
Brian T. Huss, DVM, MS
Managing Member

Dated:   July 1, 2010